UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    v.

                            07-cr-97

ANTHONY ANDERSEN,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Defendant Anthony Andersen moves to withdraw his guilty plea.

**I.    FACTS**

In February 2007, Defendant was indicted on a thirty count indictment asserting various charges, including fraud and money laundering. Defendant retained attorney Dennis Schlenker. On February 27, 2007, Defendant entered a plea of not guilty.

Defendant expressed his concern that his wife, Laura Andersen, not face criminal charges. Attorney Schlenker advised Defendant that, if he did not plead guilty to one or several of the counts, it was likely that his wife would be indicted. Attorney Schlenker provided Defendant with the name of an attorney Laura Andersen could contact concerning representation.[1] Thereafter, the grand jury returned a superceding indictment naming Laura Andersen as a co-defendant. Upon the recommendation of Attorney Schlenker, Laura Andersen ultimately retained other defense counsel, Attorney Daniel Stewart.

---

[1] The parties dispute whether Attorney Schlenker recommended an attorney for Laura Andersen before or after she was indicted.

Through her attorney, Laura Andersen engaged in plea negotiations with the government.  Defendant contends that he was unaware of this.  By letter dated September 13, 2007, Attorney Schlenker advised Defendant that Laura Andersen was ambivalent with respect to whether to take a plea.  Attorney Schlenker allegedly advised Defendant that his chances of success were diminished because of Laura Andersen's decision to enter into a plea agreement with, and cooperate with, the government.  Defendant claims that Attorney Schlenker never informed him that Laura Andersen decided to enter a guilty plea.  By letter dated October 5, 2007, Schlenker informed Defendant of the weaknesses of the defense and recommended that he enter into a plea agreement with the government.  Among other things, the October 5, 2007 letter states that "[i]t is also anticipated that the jury will, in some limited fashion, be told that Laura has pled guilty to a Federal crime as set forth."  That evening, Laura Andersen informed Defendant that she had decided to enter a guilty plea.  On October 9, 2007, shortly before the scheduled trial date, Defendant entered a plea of guilty.

Defendant now claims that his decision to enter a guilty plea was not done knowingly or voluntarily, but that it was the result of deficient advice and coercion from his attorney.  Defendant contends that his attorney "never informed [him] that his co-defendant, the defendant's own wife, had negotiated a plea bargain for herself. . . ."  He also claims that Attorney Schlenker entered into plea negotiations with the government without Defendant's knowledge or permission.  Defendants asserts that his wife negotiated a plea agreement with the government with the participation of Attorney Schlenker, which constitutes "a serious and irreconcilable conflict of interest."  Defendant states that he was misled to believe that "the only way to ensure that my wife would be protected from further prosecution would be

through my acceptance of the guilty plea. . . ." Lastly, Defendant asserts that, on or about October 7, he advised Attorney Schlenker that he did not wish to plead guilty, but that Attorney Schlenker told him it was too late, that he had to plead guilty, and that he would have no chance of success if he proceeded to trial.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 11(d), where, as here, the Court has already accepted the plea, but not yet imposed sentence, Defendant may withdraw his plea of guilty if he can show a fair and just reason for requesting the withdrawal. See United States v. Adams, 448 F.3d 492, 498 (2d Cir. 2006). "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of please not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008).

In determining whether to allow a withdrawal, "the court considers whether there are valid grounds for withdrawal and whether granting the motion is fair and just, given any prejudice that the government might suffer as a result." Id. The Court should consider the time lapse between the guilty plea and the motion and whether the government would be prejudiced by a withdrawal of the plea. United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997). The "government need not show prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." Id. "Ultimately, defendant bears the burden of demonstrating valid grounds for withdrawal." Adams, 448 F.3d at 498. "To get permission to withdraw a guilty plea, a defendant must raise a significant question about the voluntariness of the original plea. A defendant's bald statements that simply contradict what

he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." Torres, 129 F.3d at 715; Doe, 537 F.3d at 211.

### III.     DISCUSSION

The primary basis of Defendant's motion is that he pleaded guilty to ensure that his wife would not be prosecuted and that, had he known his wife intended to plead guilty, he would never have agreed to plead guilty.

Several facts weigh against granting Defendant's motion. First, and, perhaps, most significantly, Attorney Schlenker's October 5, 2007 letter advises Defendant that "[i]t is anticipated that the jury will, in some limited fashion, be told that Laura has pled guilty to a Federal crime as set forth." Defendant claims he was given this letter **before** his October 5 meeting with Attorney Schlenker during which time they discussed whether he should plead guilty. See Def.'s Aff. at ¶ 22.[2] The contents of this letter strongly suggest that Defendant was aware of his wife's intention to enter a guilty plea before, or at least during, the October 5 meeting.

Second, the events at the plea allocution demonstrate that Defendant knowingly and voluntarily chose to plead guilty. Defendant and his wife entered guilty pleas simultaneously. Thus, Defendant certainly knew before he actually pleaded guilty before the Court that his wife was going to do the same. Contrary to Defendant's claim about the advice he received from Attorney Schlenker (which Attorney Schlenker denies), the Court specifically advised Defendant that he had "the right to persist in [his] original plea of not guilty as to all counts of the indictment" and to proceed to trial. Tr. at 4. Defendant admitted

---

[2] By this time, Defendant certainly knew that his wife was under indictment and that she was considering the possibility of pleading guilty. See September 13, 2007 letter from Attorney Schlenker.

that his attorney advised him concerning the nature of the charges, the sentence he would be facing, and his chances of success if he went to trial. The Court also "warn[ed]" Defendant "not to plead guilty unless [he was], in fact, guilty of . . . the charges made against [him]. . . ." Tr. at 7. Notwithstanding this warning, Defendant stated he still wished to plead guilty. Id. When asked how he pleads to Counts 10 and 27 of the indictment, Defendant responded "guilty." Tr. at 16, 17. Defendant also advised the Court that he was satisfied with his representation by Schlenker and that neither Schlenker, the Assistant United States Attorney, nor any other person made any promises that he would be treated leniently in exchange for his guilty plea, other than what was in the plea agreement. Tr. at 20. Defendant also admitted to entering his plea freely and voluntarily. Id. at 20-21. Further, after the government recited the facts it would prove demonstrating that Defendant violated federal law, the Court inquired of Defendant whether that was what he did. Defendant responded, "Yes, your honor." Tr. at 28. Defendant also informed the Court that he signed the plea agreement, that he talked it over with Attorney Schlenker before he signed it, that Attorney Schlenker explained it to him, that he understood it, and that he signed it voluntarily. Tr. at 35-37. Lastly, after being advised about the potential sentences and his other rights, the Court again asked Defendant whether he still wished to plead guilty. Defendant responded that he did and that he was pleading guilty because he was guilty. Tr. at 38-39. Attorney Schlenker also stated in open court that he made no promises or threats to Defendant to induce him to plead guilty. Tr. at 40. The Court then entered a finding that Defendant entered his plea freely and voluntarily. Defendant's current submissions, which are little more than contradictions of the statements he made at the plea allocution, and are not supported by the record evidence, are insufficient to warrant granting his motion.

Third, the lengthy period of time (nearly one and a half years[3]) before the entry of the guilty plea and the instant motion to withdraw the plea weighs against granting the motion.  See United States v. Grimes, 225 F.3d 254, 259 (2d Cir. 2000).

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion to withdraw his plea is DENIED.

IT IS SO ORDERED.

Dated: June 18, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[3] Defendant entered a guilty plea on October 9, 2007.  The instant motion was filed on March 19, 2009.  This is a period of 527 days.